May it please the court. My name is Kristen Murray. I'm here on behalf of Mr. Son Tran. I'll ask for two minutes for rebuttal. All right. This case involves two issues on appeal, both of them dealing with the testimony of the lead case detective, Detective Brandon James. The first issue is whether or not the district court erred in allowing him to testify as both an expert and a lay witness without clearly distinguishing between the two types of testimony for the jury. Wasn't there other evidence from witnesses independent of the officer to what these terms meant and size and quantity and that sort of thing? Yes.  Because Detective James was the lead case detective. He was a material key witness for the government. And while there was other testimony from other witnesses, his testimony and not only his investigation of the case, but also his experience regarding general drug trafficking. The jury was told that he was in charge of the entire investigation. The jury was told that he was in charge particularly of the wiretap operation. He identified the witnesses or the rather the identity of the callers on the wiretaps. And there were many, many wiretaps presented to the jury. But is he the only one? That's really what I think Judge Hawkins is going to. Is he the only one who did those things? It struck me as that it was almost overlap. There were some other witnesses, civilian witnesses that testified. Many of the civilian witnesses, though, were considered confidential informants or witnesses that were cooperating with the government where their credibility was at issue. But we're not going to second guess a credibility determination. So could you it would be helpful to me anyway, if you could identify what wasn't overlap? What only came from him? It was only from Detective James that he believed that he accurately identified all the witnesses in the wiretaps that are the callers in the wiretap. Detective James gave an opinion that Mr. Tran was directing the activities of others. Both of that was material. Detective James did provide information on general drug trafficking activities that I don't believe overlapped with Special Agent Jewell, who also provided some testimony regarding that as well. I think if you look at Detective James' testimony as a whole, that's the problem. The jury was not told how to weigh his testimony. And because it was the dual role testimony and they weren't given that clear distinction, the concerns that this court has expressed previously were present. That the jury wouldn't know how to weigh this testimony. And while there was testimony from other witnesses, right, again, this was the lead detective who came with an air of knowledge and importance because he was so involved in the investigation. Did he testify about the firearm counts? I thought he did. He may have, but I'm not certain. The jury acquitted on those counts. They did. This was hardly a jury that sort of took everything the government said. He didn't provide expert testimony on firearm counts. If he testified, and I don't remember the specifics of his testimony regarding the firearm counts, but I know a lot of that testimony came from the cooperating witnesses. And officers that did surveillance when the stop was done when the gun was found. But doesn't that, to a degree, also prove your point that the jury was actually looking at the witnesses? I'm not sure we've heard an answer to the question of where this precise prejudice was. I think if you look at his testimony as a whole, the impermissible lay opinion testimonies he gave and then the expert testimony combined without giving a clear direction to the jury on how they're supposed to weigh that testimony. Which this court has said the jury needs to be provided with that instruction. There's a concern that the jury gave his testimony undue weight and didn't know how to weigh the specific forms of testimony that he presented. It wasn't just, his testimony was material to all of the drug counts, all of them. And those are all the counts that Mr. Tran was convicted on. Now the government has argued that Detective James' testimony in the expert testimony capacity was just interpreting a few drug terms. And I would argue that that's not the case here. He did a lot more than that. While he did interpret some drug terms or jargon, he also provided testimony about general drug trafficking activities not related to this case. What you would expect to hear on wiretap calls. And again, the government's case relied very heavily on the wiretaps. There were, I think, eight counts total where it was almost exclusively the wiretaps that supported the evidence met on those counts. He provided testimony on the opinions of the accuracy of the government's identification of the callers, whether or not Mr. Tran directed the activity of others. And the courts have recognized that there's a real risk of law enforcement witnesses being asked to interpret evidence. That's for the jury to decide, and it usurps the jury's role. Now I focused pretty closely on the Vera case that this court ruled upon when looking at the instructional error on the dual role. Did you say you said instructional error? Instructional error, not instructing the jury. For a minute I thought you said structural error. Oh, no. And I thought I was in the wrong courtroom. Absolutely not. Okay.  Not at all. I misheard you. Okay. Instructional error. The court's failure to give that instruction. And it's true that the defense or prosecution, no one asked for that instruction. But this court has held that it's ultimately up to the district court to make sure that the jury knows how to weigh the specific evidence in the case. But you still have to show prejudice. That's the rub, right? You do. You do have to show prejudice. Yes. Yes. But I think if you look at the Vera case, the Vera case is similar to this case in the sense that... In that case, wasn't there just, that was the only witness. It was much easier in that case, it struck me in reading it, much easier in that case to say this is the only source of very key testimony. And that's why we started, I think, speaking for myself, with the overlap in this case. Sure. And there were a lot of counts charged in this case, and there was a lot of different type of evidence. But I think when you, I ended up having to chart out the different counts. And when you look at the number of the counts that really just focused on the wiretap evidence, there was a lot of counts that really relied upon that evidence. And the wiretap evidence, Detective James' testimony, was pretty important for. And I think that that's what you have to look at in looking whether or not there's prejudice. Unless there's additional questions, I think I am going to reserve the rest of my time for rebuttal. You may do that. Thank you. Thank you. Good morning. Charlene Kosky for the United States. Mr. Tran does not challenge the reliability or the accuracy of Agent James' testimony. And he has not met his burden of even identifying the specific testimony that he is challenging or any harm that it might have caused. But even looking at the statements made that the government identified in its brief, the testimony clearly falls under Gadsden, and it is clear that there is no prejudice. And just to outline the evidence that was introduced at trial that corroborated Agent James' testimony. First, and also distinguishing this case from Vera, the foundation is not at issue. Again, Mr. Tran does not challenge the authenticity or the foundation laid for Agent James' testimony, which was primarily lay testimony with some expert reliance on his background as a drug expert. The evidence against him was overwhelming. It included that agents recovered hundreds of grams of heroin and cocaine from his residence, along with $70,000 in currency. There were video and audio recordings showing him participating in drug transactions. They were also personally observed by law enforcement, and those agents testified as to their observations. He was the subject of controlled by, recorded by law enforcement, and observed by law enforcement. People heard speaking with him on the wiretap calls, came in and identified him as the person speaking and themselves as the person speaking, and talked about the code words that they were using and the code words that the organization used generally. His location and participation in some of these drug deals was verified through GPS coordination that was run through his cell phone, and the officers also knew that it was his cell phone. Co-conspirators testified about buying drugs from him and about the business of the drug trafficking organization in general and Tran's role in it. The police stopped him in a traffic stop and found drugs in his vehicle. And Agent Jewell, who was actually the expert witness in this trial, offered expert testimony regarding the use of code words generally by drug trafficking organizations, and that testimony further corroborated Agent James' testimony. After Vera, shouldn't asking the court, the government asking the court, to give an instruction on the difference between lay and expert testimony be sort of a prosecutor's checklist? I think in this case, I think this case is different from Vera and the other cases that... Of course it is, and we've all talked about that, but... I think that if you were bringing in a witness where you're clearly having the witness testify as an expert and a lay witness, that would be a more appropriate situation where the government might raise that issue. But under the circumstances here, we had an expert witness who was not Agent James. It was Agent Jewell. Agent James was brought in as the lead case agent, and he testified almost entirely about things that he learned in his role as the lead case agent, and occasionally relying on his background to provide color and context to that testimony. I would also point out that the defendant, Tran, did not rely on these portions of the testimony, were not a part of his defense at trial, which also distinguishes it from Vera, where Vera, the testimony issue, was the only testimony offered proving the drug quantity. Here, at first, everything was corroborated, and the testimony that we're talking about here today was not used to enhance his sentence or was not central to his convictions. I went to try a case down in Arizona in front of a visiting judge who was really crusty, and he always said the same thing to me at the start of the trial. No hooks. I'm not going to give you anything to hang your head on. This is when either I was prosecuting or defending. So this is a way to eliminate hooks. Wouldn't have hurt a bit in this case to suggest to Judge Kuhnhauer, why don't you just give that instruction, tell the jury there's a difference between lay and expert testimony, and in this case we've had at least one witness who gave a little bit of both. And I don't disagree with that. I would just say that it was not forefront because we had separate expert witness, and if it had come up, if anyone had proposed it, there wouldn't have been an objection to using that instruction. As the case was laid out and as the witnesses recalled, there was no need. Sometimes when you're on offense, you also have to play defense. Duly noted. Yes, thank you. I'd also just respond to one other point that Appellant made, and that is the comments that Agent James made regarding his belief of the voice identifications, which she pointed out as the only evidence that wasn't corroborated. I would say that A, the accuracy of the voice identifications is not at issue and it hasn't been challenged, and B, that testimony was given as part of the government's role under 901 to authenticate those documents before they were introduced as evidence. So if there are no further questions, I'd ask that you affirm. Thank you. Thank you. Just very briefly, I know that the government relied very heavily on Gatson in their argument or in support of their arguments, and I just wanted to point out that Gatson was a very different case. Gatson involved an officer, a law enforcement officer, that was testifying primarily as a lay witness except for one definition that he defined regarding drug jargon. That's very different than the situation we have here. Additionally, I did want to point out that in its briefing, the government indicated that the jury instructions that were provided by the court were sufficient if you take them all together, the direct evidence versus circumstantial evidence and then the expert witness testimony instruction. I would argue that it's not sufficient. There needed to be an instruction that addressed Detective James' testimony specifically where the jury was informed that it involved Detective James' testimony. Explaining his dual role, there was no instruction that was provided to the jury that talked about what a fact, what fact testimony was versus opinion testimony and how to weigh that. And I think that that's why the jury instructions were not sufficient. Thank you. Thank you. Thank both counsel for your argument this morning.
judges: Hawkins, McKeown, Christen